**LITTLE BEAVER ENTERPRISES, a Partnership, Appellee,**

v.

**The HUMPHREYS RAILWAYS, INCORPORATED, Appellant,**

and

**Hynautic, Inc., Defendant.**

No. 83–1123.

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1983.

Decided Oct. 5, 1983.

Mark T. Coberly, Norfolk, Va. (John M. Ryan, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

William A. DeStefano, Philadelphia, Pa. (Oliver, DeStefano, Pentima & Partridge, Philadelphia, Pa., on brief), for appellee.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

SPROUSE, Circuit Judge:

Humphreys Railways, Inc. appeals from the district court judgment awarding Little Beaver Enterprises $7,691 to cover the costs of replacing a hydraulic steering system for its fishing vessel, the IMPERIAL. · Humphreys attacks both the finding of liability and the award of damages, arguing: (1) that the trial court was clearly erroneous in its finding of breach of warranty; (2) that the trial court erred as a matter of law in allowing Little Beaver to recover when it failed to comply strictly with the repair contract's 30-day written notice requirement; and (3) that the trial court's damage award was not based on sufficient evidence in the record. We disagree with the appellant's first two arguments for the reasons set out below, and affirm the liability part of the district court's judgment. The argument concerning the damage award has merit, and we vacate that part of the judgment and remand for further proceedings.

Little Beaver Enterprises (Little Beaver), a partnership comprised of Ronald Frantz and James Feifer, owns and operates the fishing vessel IMPERIAL. Humphreys Railways, Inc. (Humphreys), specializes in marine repairs, maintenance, and service. In early November, 1980, Little Beaver contacted Humphreys concerning the possibility of having the IMPERIAL overhauled. In conjunction with the general overhaul, Little Beaver also was interested in having the IMPERIAL's manual steering system replaced with a hydraulic system. George Edwards, Humphreys' manager, informed Little Beaver's owners that his firm was capable of performing the steering installation, and promised to "shop" for the best system, secure price information and again contact Little Beaver. Several days later Edwards recommended the "Hynautic Steering System," produced by Hynautic, Inc., for installation in the IMPERIAL. Little Beaver accepted the recommendation, and later signed Humphreys' standard work order contract containing, among other things, two paragraphs limiting the repair firm's liability to defective workmanship or material.[1]

---

1. The work order contract listed items for which Humphreys would be potentially liable,

Humphreys completed the overhaul and installation work on the IMPERIAL around the beginning of December, 1980. Manned by its owners Frantz and Feifer, the vessel was relaunched without sea trials and immediately set out for Hampton, Virginia. The IMPERIAL experienced persistent steering difficulties throughout the voyage, but reached Hampton safely the same day. The following morning Little Beaver notified Humphreys, by telephone, about the steering problems. Humphreys arranged, through a Hampton contractor, to send a welder to the IMPERIAL to effect repairs. The welder apparently completed his work according to instructions, but the Hynautics Steering System was still inadequate to control the IMPERIAL when she was loaded above 50% capacity. The vessel left Hampton for its home port of Cape May, New Jersey, where, after a difficult voyage, Little Beaver's owners personally replaced the Hynautic system with a different system.[2]

Little Beaver subsequently brought suit against Humphreys in the United States District Court for the Eastern District of Virginia, alleging defective workmanship[3] and breaches of the implied warranties of merchantability and fitness for a particular

purpose. Humphreys cross-claimed for the amount of its repair bill still owed by Little Beaver. The trial court, sitting in admiralty without a jury, ruled in favor of Little Beaver on the defective workmanship claim and awarded judgment in the amount of $7,691. The judgment award was set-off against the monies owed Humphreys on its cross-claim, resulting in an actual cash award of $1,014.

Humphreys argues on appeal that the trial court was clearly erroneous in finding liability based on defective workmanship. It concedes that the Hynautics Steering System it selected and installed in the IMPERIAL was inadequate to control a trawler of its size and tonnage, but argues that this mistake could not be grounds for liability. The selection and installation of an inadequate steering system, Humphreys argues, does not fall into the ambit of interests protected by a warranty against defective workmanship, but rather is actionable under the warranty of fitness for a particular purpose, if at all.[4]

Humphreys' interpretation of its warranty against defective workmanship is too narrow. The warranty imposed on a contractor in admiralty is to effect ship repairs in a workmanlike manner.[5] *See Ryan*

including a damage limitation on the warranty for workmanlike service:

> In case of defective workmanship or material, our [Humphreys'] liability is limited strictly to the cost of repair, correction or replacement thereof.... We shall not be liable for any consequential damages whatsoever, including but not limited to, lost revenue, crew wages, salvage or tug expense, delay or loss of use.

Another provision reinforced the theme of limited liability: "The foregoing is in lieu of all warranties and liabilities, whether statutory, expressed or implied, including, but not limited to, warranties of merchantability, fitness for a particular purpose and workmanlike service." The first quoted language, however, is an express warranty against defective workmanship, so like the trial court, we need not decide whether this last paragraph is an effective disclaimer.

2. Humphreys originally had considered installing the Wagner system in the IMPERIAL, but instead opted for the Hynautic's steering mechanism. Little Beaver selected the Wagner as the replacement after discovering from several

sources, including Hynautics itself, that the system installed by Humphreys was never designed for use in a vessel the size and tonnage of the IMPERIAL.

3. The original complaint also named Hynautic, Inc., producer of the steering system, as co-defendant. Hynautic was later dismissed from the suit after the trial court heard all the evidence. Little Beaver has not appealed that dismissal.

4. Under Humphreys' theory, Little Beaver would be without a remedy, since the contract disclaimed the warranty of fitness for a particular purpose.

5. The warranty of workmanlike service traces its origins, in the admiralty context, to the United States Supreme Court decision in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Its early applications frequently involved shipowner suits, against Stevedore companies, seeking indemnity for damages paid to injured workmen. *See, e.g., Ryan, supra; Ita-*

*Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Italia Societa Per Azioni Di Navigazione v. Oregon Stevedoring Co.,* 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); *H & H Ship Service Co. v. Weyerhaeuser Line,* 382 F.2d 711 (9th Cir.1967); *American Export Lines v. Norfolk Shipbuilding & Drydock Corp.,* 336 F.2d 525 (4th Cir.1964); *Booth Steamship Co. v. Meier & Oelhaf Co.,* 262 F.2d 310 (2d Cir.1958); *see also* 9 Williston, *Contracts* § 1012C at 38–39. This warranty need not be express to bind the ship repairer to use the degree of diligence, attention and skill adequate to complete the task. *See Coffman v. Hawkins & Hawkins Drilling Co., Inc.,* 594 F.2d 152 (5th Cir.1979); *Tebbs v. Baker-Whiteley Towing Co.,* 407 F.2d 1055 (4th Cir.1969). The warranty of workmanlike service, of course, does not make the repairer a guarantor of the results. Where it has performed its tasks as a skillful workman should, or where its efforts have been hindered by the actions of the other contracting party, the repair firm will not be held responsible for defects attributable to faulty workmanship. *See Coffman,* 594 F.2d at 155; *see also Weyerhaeuser Steamship Co. v. Nacirema Oper. Co.,* 355 U.S. 563, 567, 78 S.Ct. 438, 440, 2 L.Ed.2d 491 (1958). However, the warranty is otherwise very broad. It is "comparable to a manufacturer's warranty of the soundness of its manufactured product." *Ryan,* 350 U.S. at 133–34, 76 S.Ct. at 237. It has been applied to find fault where repair jobs are improperly performed; *see, e.g., Booth Steamship Co., supra,* (engine repair contractor); where the misdelivery of goods has caused monetary damages to shipowners, *see, e.g., David Crystal, Inc. v. Cunard Steam-Ship Co.,* 339 F.2d 295, 299 (2d Cir.1964); and where efforts intended to prevent damage

to a ship have been ineffective, *see, e.g., Fairmont Shipping Corp. v. Chevron Internat'l Oil Co., Inc.,* 511 F.2d 1252 (2d Cir. 1975). Significantly, the warranty of workmanlike service has been recognized as a ground for liability where the equipment chosen for a specific purpose is defective or unsafe. *Italia Societa,* 376 U.S. at 321, 84 S.Ct. at 752; *Booth Steamship Co.,* 262 F.2d at 314; *American Presidents Lines Ltd. v. Marine Terminals Corp.,* 234 F.2d 753, 759 (9th Cir.1956).

 The significance admiralty law has historically attached to the repairer-shipowner relationship weighs heavily against Humphreys' narrow interpretation of its duties to Little Beaver. Limitations on the "warranty of workmanlike service are not looked upon with favor and are strictly construed." *Elgie & Co. v. Steamship "S.A. Nederburg,"* 599 F.2d 1177, 1183 (2d Cir.1979). Viewed in this light, the trial court's finding that Humphreys' selection and installation of an inadequate steering system constituted defective workmanship easily survives the clearly erroneous standard of review and, indeed, has substantial support in the evidence. Humphreys selected the Hynautic system after representing to Little Beaver that it could perform the installation work. It exercised complete control over the installation process and could have checked with Hynautic directly concerning the suitability of its system for the IMPERIAL. Moreover, it had the opportunity to correct the steering deficiencies once they were discovered, but failed to effect the necessary repairs. Taken together, these facts clearly show that Humphreys did not exert the workmanlike efforts expected of a maritime repair firm under any

*lia Societa Per Azioni Di Navigazione v. Oregon Stevedoring Co.,* 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). While its applicability to shipboard personal injury cases has been statutorily changed by the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C. §§ 901 *et seq.,* (1976 & Supp.) *see, e.g., Scindia Steam Navigation Co. v. Lauro De Los Santos,* 451 U.S. 156, 164–65, 101 S.Ct. 1614, 1620, 68 L.Ed.2d 1

(1981), the warranty of workmanlike service has continued vitality in other areas of admiralty. *See Fairmont Shipping Corp. v. Chevron Internat'l Oil Co.,* 511 F.2d 1252 (2nd Cir.1975) (applicable to tonnage contracts); *David Crystal, Inc. v. Cunard Steam-Ship Co.,* 339 F.2d 295 (2d Cir.1964) (misdelivery of goods). *See also,* Gorman, *Ryan* Indemnity in Maritime Property Damages Cases: What of Proportionate Fault, 8 U.Balt.L.Rev. 42–69 (1978).

reasonable reading of its contractual responsibilities.

 Humphreys further argues that, even if it is liable for breach of its express warranty against defective workmanship, Little Beaver is barred from recovering because of its failure to comply with the contract's 30-day written notice requirement.[6] The trial court considered and rejected this argument, ruling that Humphreys accepted actual notice of the defective workmanship performed on the IMPERIAL, and thereby relieved Little Beaver of the written notice requirement. Humphreys does not contest the trial court's finding that it had, and acted on, the actual notice given by Little Beaver. Rather, it contends that the actual notice, given orally, was inadequate to supplant the contract's written notice provision.[7] We disagree. Like other contract provisions, the requirement of written notice may be waived. 6 S. Williston *Contracts* §§ 887B, 887BB (3d ed. 1962 & Supp. 1982); *see also* 28 Am.Jur.2d *Estoppel and Waiver* § 162 (1966 & Supp.1983). The waiver need not be expressed to be effective; it is sufficient if the acts or conduct of one party evidences an intention to relieve the other party of his duty to strictly comply with the contract terms. 28 Am.Jur.2d *Estoppel and Waiver* § 160 (1966 & Supp. 1983). Generally, this implied waiver is most often recognized where the party's conduct is inconsistent with any other intention than the waiver of contract rights or where the party accepts alternative performance which provides roughly the same protections as strict performance would have provided. *Id.* The instant case has both elements present. The timing of Little Beaver's notice was prompt, coming only a day after the IMPERIAL left Humphreys' workyards. Humphreys obviously considered the notice to be effective, for it immediately acted, albeit unsuccessfully, to correct the defects in its workmanship by sending a welder to the IMPERIAL. Moreover, there is no disputing that the notice was sufficiently specific to permit Humphreys to gauge the extent of the problems the IMPERIAL was experiencing. Nor is there any doubt that Humphreys was presented with a reasonable opportunity to effect repairs within the 30-day notice period. In sum, Humphreys not only acted on Little Beaver's oral notice, but the notice gave Humphreys every substantive protection strict compliance with the contract would have provided.

 There is merit, however, in Humphreys' challenge to the $7,691 damage award and we remand for a correct determination of damages. The trial court, as a fact-finder, possesses considerable discretion in fixing damages, and its decision will be upheld absent clear error. *See Thompson v. National Railroad Passenger Corp.,* 621 F.2d 814, 823 (6th Cir.1980). However, the trial court, as a threshold requirement, must expose "the measure of damages and method of computation," both to inform the litigants of the basis for its findings and to

6. The relevant contract language provides: "In case of defective workmanship or material, our [Humphreys Railways] liability is limited strictly to the cost of repair, correction or replacement thereof, and *only where such defects are reported to us in writing within thirty days after completion of the work.* (emphasis added)

7. Humphreys cites the Sixth Circuit's decision in *Standard Alliance Industries, Inc. v. Black Clawson Co.,* 587 F.2d 813 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979), to buttress its argument, that the provision of actual notice of defects did not relieve Little Beaver from the further duty to provide written notice. We find this case to be inapplicable to the situation confronted here. *Standard Alliance* dealt with a sale of goods under Ohio's Uniform Commercial Code and the statutory duty thereunder to provide the seller with reasonable notice of a breach or "be barred from any remedy." UCC § 2–607(3)(a). The case *sub judice,* by contrast, involves a service contract, not covered by the UCC, which contains an expressed 30-day notice requirement. Moreover, the *Standard Alliance* Court confronted the situation wherein the seller of the goods made an apparently successful attempt to correct the noted defects, terminated his curative efforts and subsequently received no further notice that the problems had resurfaced until sued almost a year later. The evidence indicates Humphreys' repair effort was not even marginally adequate to cure the noted defects.

afford the appellate court "a possibility of intelligent review." *Safer v. Perper,* 569 F.2d 87, 100 (D.C.Cir.1977). The trial court's findings in the instant case fall below this requirement and have little support in the evidence. The $5,160 labor cost component of the award, for example, is virtually unexplained, either by the trial court's opinion or by reference to the trial record. It appears the trial court arrived at the figure by estimating what Little Beavers' partners would have earned for the month of December had they fished instead of worked on the IMPERIAL's steering system. The use of this method of computation, however, directly contradicts the trial court's conclusion of law, that Humphreys' liability could not include consequential damages in light of the contract's limiting language. The trial court's findings regarding the $15 an hour value of Frantz and Feifer's labor, the allowed expenses of $67 for meals and $265 for emergency labor costs, and the inclusion in the award of $600 for William Weary, are likewise insufficiently explained and unsupported by evidence adduced at trial.[8]

Accordingly, the damages part of the district court's judgment is vacated and remanded for further proceedings consistent with this opinion. The liability part of its judgment is affirmed.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

8. The trial court used a pre-trial exhibit offered by Little Beaver as the apparent source of its damage calculations. We note, however, that the exhibit was denied admission into evidence upon objection by Humphreys' counsel. It could not, therefore, serve as the basis for the subsequent damage award.