POLO FASHIONS, INC., Appellee,

v.

CRAFTEX, INC., Appellant,

and

Bobby O'Neal and Keith O'Neal, Defendants.

POLO FASHIONS, INC., Appellant,

v.

CRAFTEX, INC.; Bobby O'Neal and Keith O'Neal, Appellees.

Nos. 85–2302, 85–2303.

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1986.

Decided April 9, 1987.

Larry L. Coats (David E. Bennett, Mills and Coats, Raleigh, N.C., on brief), for appellant.

Milton Springut (Morton Amster, Susan R. Reiss, Amster, Rothstein & Ebenstein, New York City, Charles C. Meeker, Sanford, Adams, McCullough & Beard, Raleigh, N.C., on brief), for appellee.

Before WIDENER and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This is an action for trademark infringement under the Lanham Act and for unfair competition in pendent state law claims. The district court awarded summary judgment to the plaintiff on the question of liability and, after a bench trial, determined plaintiff's damages to be Craftex's profits in making and selling the offending goods, and that amount was trebled under state law.

On the defendant's appeal we affirm the judgment; on the plaintiff's cross-appeal we reverse the judgment insofar as it exonerated the individual defendants.

## I.

Polo Fashions is a well-known fashion house selling clothing for men and women designed by Ralph Lauren. On its labels, the company uses its trademarks and tradenames POLO, RALPH LAUREN and POLO BY RALPH LAUREN. It also uses extensively a fanciful embroidered representation of a polo player mounted on a horse. On knitted sport shirts, such as those with which we are concerned, the polo player symbol typically appears on the breast of the shirt.

The plaintiff's merchandise enjoys a reputation for quality. It appears to have been imitated with some frequency, and the plaintiff has successfully defended its trademarks and symbols against alleged infringers. It has done so in this court, *Polo Fashions, Inc. v. J & W Enterprises*, 786 F.2d 1156 (4th Cir.1986) (table), and elsewhere. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986); *Polo Fashions, Inc. v. Gordon Group*, 627 F.Supp. 878 (M.D.N.C.1985); *Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648 (D.Mass.1984); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 451 F.Supp. 555 (S.D.N.Y.1978).

Defendant, Craftex, Inc., is a manufacturer of knit shirts. Defendant, Bobby O'Neal, is president and principal stockholder of Craftex, and his son, Keith O'Neal, was involved in the sale of Craftex products until 1983 when he became its plant manager.

In 1982 and 1983, Craftex manufactured and the O'Neals sold 1,388 dozen knit sport shirts bearing an embroidered emblem substantially identical to the plaintiff's polo player symbol.

The plaintiff filed this action alleging four causes of action: one, trademark infringement under the Lanham Act, 15 U.S. C.A. § 1114(1) (1963); two, false designation and representation of origin under the Lanham Act, 15 U.S.C.A. § 1125(a) (1982); three, common law trademark infringement and unfair competition and four, unfair trade practices under North Carolina's Unfair Trade Practices Act, N.C.Gen.Stat. § 75–1.1 (1985).

Summary judgment went for the plaintiff as to liability on all four causes of action.

After a bench trial, the district court found that the defendants made a profit of $14,837.72 in the manufacture and sale of the accused shirts. It found the plaintiff had suffered damages in that amount, and

it then trebled the damages under North Carolina's Unfair Trade Practices Act.

## II.

Under 15 U.S.C.A. § 1114(1), the test for trademark infringement is whether there is a likelihood of confusion of the counterfeit with the genuine goods. *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984); *Marcon, Ltd. v. Helena Rubenstein, Inc.,* 694 F.2d 953, 955–56 (4th Cir. 1982). Under 15 U.S.C.A. § 1125(a), the test is substantially the same, whether there is a confusing similarity between the two marks. One retailer testified that customers questioned him about the origin of the Craftex shirts. The trademark owner need not show actual confusion in the marketplace. It is enough that it shows a likelihood of such confusion. *Pizzeria Uno,* 747 F.2d at 1527.

■ The plaintiff's symbol, standing alone, is a strong mark of the identity of the source. *See, e.g., Gordon Group,* 627 F.Supp. at 887. It has been widely used by the plaintiff and, as indicated above, has not infrequently been imitated. The strength of the mark is the "first and paramount factor" in assessing the likelihood of confusion. *Pizzeria Uno,* 747 F.2d at 1527. In this case, the two symbols are substantially identical. They are used in the same manner on the breast of the same product, knitted sport shirts. Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion. *See AMP, Inc. v. Foy,* 540 F.2d 1181, 1186 (4th Cir.1976).

■ The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement. Unfair acts of a defendant are actionable when they damage a plaintiff's legitimate business. *Gordon Group,* 627 F.Supp. at 891. Such damages are suffered when a rival adopts for his own goods a sign or symbol in an apparent imitation of another's that would likely mislead prospective purchasers and the public as to the identity of the goods. *Yellow Cab Co. v. Creasman,* 185 N.C. 551, 117 S.E. 787, 788 (1923). Such damage was suffered by the plaintiff in this case when the defendants placed on the market demonstrably inferior goods bearing the polo player symbol.

■ The North Carolina unfair trade practices statute prohibits unfair methods of competition and unfair or deceptive acts or practices. N.C.Gen.Stat. § 75–1.1 (1985). As used in the statute, the words "unfair methods of competition," have not been precisely defined by the North Carolina courts, although it has been suggested that they encompass any conduct that a court of equity would consider unfair. *Harrington Manufacturing Co. v. Powell Manufacturing Co.,* 38 N.C.App. 393, 248 S.E.2d 739, 744, 746 (1978), *disc. rev. and cert. denied,* 296 N.C. 411, 251 S.E.2d 469 (1979). A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. *Marshall v. Miller,* 302 N.C. 539, 276 S.E.2d 397, 403 (1981); *Overstreet v. Brookland, Inc.,* 52 N.C.App. 444, 279 S.E.2d 1, 7 (1981).

■ The defendants contend, however, that there was no likelihood of confusion because of a label affixed inside the back of the neck of each shirt bearing the words Knight of Armor. The plaintiff never used such a mark as Knight of Armor, but even the most sophisticated purchaser, seeing the polo player symbol on the front of the shirt, might suppose the plaintiff had adopted another trademark in addition to POLO, RALPH LAUREN, and POLO BY RALPH LAUREN. Moreover, in the after sale context, one seeing the shirt being worn by its owner, would not see the label on the back of the neck. Seeing the polo player symbol, it is likely that the observer would identify the shirt with the plaintiff, and the plaintiff's reputation would suffer damage if the shirt appeared to be of poor quality. *See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867 (2d Cir.1986).

On the facts of this case, we think that the likelihood of confusion was so unassailably established as to warrant the district

court's entry of summary judgment for the plaintiff as to liability.

## III.

The defendants challenge the award of damages, pointing to 15 U.S.C.A. § 1111, which provides that the owner of a registered trademark may not recover damages from an infringer unless the owner has given the statutory notice of the registration or the infringer has actual knowledge of it. There was no such notice with respect to the polo rider symbol standing alone. Indeed, that symbol, standing alone, had not been registered, though there is now and there was then a pending application for its registration.

■ We need not consider whether, under these circumstances, the plaintiff was entitled to an award of damages under the Lanham Act, for it clearly was entitled to such an award upon its common law claim of unfair competition and its claim under North Carolina's Unfair Trade Practices Act.

Finally, the defendants contend that under North Carolina's Unfair Trade Practices Act, only damages suffered by a plaintiff may be trebled; unconscionable profits which a court may compel a defendant to disgorge may not be trebled.

The defendants' profits, however, are a rough measure of the plaintiff's damages. Indeed, they are probably the best possible measure of damages available.

■ It cannot be said that the defendants' infringement caused the plaintiff to lose the sales of the number of shirts sold by the defendants. Nor can it be said that the plaintiff lost sales equivalent to the total dollar sales of the shirts by the defendants. The retail price of plaintiff's shirts was several times the retail price at which the defendants' goods were sold. It is more than likely that some buyers of the defendants' shirts would not have been willing to pay the higher price necessary to purchase one of the plaintiff's shirts. That the plaintiff's sales were adversely affected, however, can hardly be denied. Nor is the injury suffered by the plaintiff in its reputation for its goods mathematically convertible into a fixed dollar amount, but it is hardly to be denied that some such injury occurred. Under these circumstances, instead of having a fact finder assess damages with little guidance, fairness to the infringers suggests strongly that the plaintiff's damages should be limited to the defendants' profits, and that is what was done. The district court properly treated the award as damages suffered by the plaintiff, and trebled that amount under the North Carolina statute.

## IV.

■ In the plaintiff's appeal, it contests the district court's computation of the defendants' profits. It contends that, in computing those profits, the defendants should have been given credit only for Craftex's marginal costs, rather than its total costs, including such things as allocable overhead. In a different context, we might find some merit in this contention, but the district court, as fact finder, was called upon to assess the plaintiff's damages, not just the defendants' profits, and the damages found were to be trebled. Under those circumstances, we cannot say the district court's finding was clearly erroneous. *Little Beaver Enterprises v. Humphreys Railways*, 719 F.2d 75, 79 (4th Cir.1983).

## V.

■ We think the district court erroneously exonerated the two O'Neals. The infringement was willful, as the district court found, and each of the O'Neals participated in it. A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in trademark infringement and unfair trade practices cases. *See Transqo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Branded Apparel Merchandising*, 592 F.Supp. at 652. *See also Tillman v. Wheaton-Haven Recreation Association*, 517 F.2d 1141, 1144 (4th Cir. 1975).

AFFIRMED IN PART AND RE-
VERSED IN PART.