892 F.2d 1041
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CITIBANK, N.A., Plaintiff-Appellee,
v.
Bruno and Joan FIGLIUZZI, Defendants-Appellants.
 No. 89-1430.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 6, 1989.
Decided: Dec. 22, 1989.
 
 Joseph F. Manson, III (MacDowell & Manson, P.C.; William T. Ward on brief), for appellants.
 Calvin Hayes Cobb, Jr. (Christian R. Bartholomew, Steptoe & Johnson; David J. Mark, Shearman & Sterling; Michael McGettigan, Craig C. Reilly, Murphy, McGettigan & West, on brief), for appellee.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff brought this diversity suit to enforce the explicit terms of a guaranty agreement. The lower court granted plaintiff's motion for summary judgment, and awarded monetary damages in its favor in the amount of $2,594,997.81. Defendants now appeal this decision, alleging numerous errors by the district court. We are not persuaded by defendants' protestations of error, and accordingly affirm the judgment below.
 
 I.
 
 2
 This action stems from a $6 million Industrial Revenue Bond ("IRB") transaction entered into on December 22, 1983 by the following parties: the Industrial Development Authority of Stafford County, Virginia ("IDA"); Bruno and Joan Figliuzzi (the "Figliuzzis"); LCS Homes, Inc., a Delaware corporation ("LCS"); Citibank, N.A. ("Citibank"); and Madison National Bank ("Madison"). IDA is a regional governmental entity. Bruno Figliuzzi, a self-described multi-millionaire, is an experienced real estate developer-investor and businessman. The Figliuzzis, husband and wife, were the sole shareholders of LCS which, prior to its bankruptcy in 1986, was a manufacturer of prefabricated homes. Citibank and Madison are national banking associations, the former based in New York City and the latter in Washington, D.C. This transaction provided LCS with the financing needed to construct a modular home manufacturing plant in Stafford County.
 
 
 3
 The IRB deal involved the following steps. The Figliuzzis conveyed 27 acres of land on which the plant was to be situated to IDA, which executed a $6 million Industrial Development Revenue Note (the "Note") secured by a deed of trust (the "Deed") to the conveyed property and a UCC financing statement. IDA then reconveyed the encumbered land to LCS (who assumed the obligation to repay the Note), and assigned the right of repayment under the Note to Madison (who loaned $6 million to LCS). Meanwhile, Citibank issued to Madison a standby, irrevocable, and transferable letter of credit in the face amount of $6 million (the "Letter of Credit") pursuant to a Reimbursement Agreement (the "Reimbursement Agreement") between Citibank and LCS. Contemporaneously, the Figliuzzis entered into an agreement (the "Guaranty") with Citibank and Madison guaranteeing the obligations of LCS to repay any amount drawn under the Letter of Credit, any amount owing under the Reimbursement Agreement, and any amount due and payable under the Note. To comply with federal bank regulations, Madison later sold its interest in the Note to Citibank, who opted to leave Madison as the beneficiary under the Letter of Credit.
 
 
 4
 The LCS enterprise was largely unsuccessful. The company eventually defaulted on the Note, and filed for protection against creditors under Chapter 11 of the Bankruptcy Code. Citibank, as payee under the Note, accelerated the Note and demanded payment from the Figliuzzis under the terms of the Guaranty. Upon their refusal, Citibank brought this action to enforce repayment. The district court granted plaintiff's motion for summary judgment on the merits of its claim, holding that Citibank was entitled to both the unpaid balance due on the Note, and the outstanding service fees on the Letter of Credit. Shortly thereafter, the Figliuzzis filed their own Chapter 11 bankruptcy petition. A year later, the district court conducted a trial on the issue of damages, and awarded Citibank the amount of $2,594,997.81, consisting of the principal owed, the default (rather than ordinary) interest on the debt, the Letter of Credit service fees, and attorney's fees. This appeal followed.
 
 II.
 
 5
 In summary, the Figliuzzis have made the following assignments of error. First, the Figliuzzis assert that Citibank should have resorted to the Letter of Credit (an LCS obligation) first before seeking repayment under the Guaranty (the Figliuzzis' obligation). Second, they claim that there is a material issue of fact as to whether Citibank acted in bad faith by "essentially," but not actually, accelerating the Note before LCS's actual default. Third, the Figliuzzis maintain that the default interest rate on the Note constitutes an impermissible penalty. Fourth, they argue that because of Citibank's initial allocation of certain payments in accordance with the pre-default terms of the Note, Citibank is now precluded from reallocating the payments between principal and interest figured at the higher default rate, that Citibank implicitly waived its right to impose the default interest rate, and that the Figliuzzis are somehow discharged from their obligations under the Guaranty. Fifth, the Figliuzzis believe that the district court erred in awarding letter of credit fees to Citibank from the time that Madison sold the Note to Citibank. Sixth, they claim that the district court erred in awarding attorney's fees under the Guaranty. Finally, the Figliuzzis assert that the district court erred in granting Citibank's motion to strike the defendants' jury demand.
 
 III.
 
 6
 This court has held that summary judgment should be granted in cases "where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. See Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir.1950); Charbonnages De France v. Smith, 597 F.2d 406, 414 (4th Cir.1979). Summary judgments are reviewed de novo on appeal. See Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir.1988).
 
 
 7
 With respect to the determination of damages, "[t]he trial court, as a fact-finder, possesses considerable discretion in fixing damages, and its decision will be upheld absent clear error." Little Beaver Enterprises v. Humphreys Railways, Inc., 719 F.2d 75, 79 (4th Cir.1983); Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir.1987) (also applying the clearly erroneous standard).
 
 IV.
 
 8
 In the present case, we conclude that there are no material questions of fact in dispute, that Citibank was entitled to relief based on the Guaranty, that the Figliuzzis' assertions of error by the district court have no merit, and that the lower court's award of damages was not clearly erroneous. Accordingly, the decision of the court below is
 
 
 9
 AFFIRMED.