896 F.2d 545
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AMC MECHANICAL CONTRACTORS, INC., Plaintiff-Appellee,
v.
MARRIOTT CORPORATION; Project One Hotel Limited
Partnership, Defendants-Appellants.
 No. 89-2605.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 31, 1989.
Decided: Jan. 30, 1990.
 
 S. Miles Dumville (Stephen C. Hall, Marcella R. Fleming-Hicks, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., on brief), for appellants.
 Bowman Staples Garrett, Jr. (Garrett & McManus; G.H. Gromel, Jr., Hunton & Williams, on brief), for appellee.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and JOSEPH H. YOUNG, Senior United States District Judge for District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 AMC Mechanical Contractors, Inc. ("AMC") brought this diversity action against Marriott Corporation ("Marriott") and Project One Hotel Limited Partnership ("Project One") for damages allegedly incurred by AMC as a result of its work as a contractor on the construction of Marriott's hotel in Richmond, Virginia. More precisely, AMC alleges that Marriott's actions during the hotel's construction resulted in compensable "extra work" for AMC and had an adverse "impact" on AMC's ability to satisfy its obligations to Marriott in a timely manner. Following a trial by jury on the issues of liability and damages, the district court entered judgment in favor of AMC in the amount of $55,356.08 for "extra work" damages, and $402,042.30 for "impact" damages, together with interest. Marriott and Project One now appeal that decision. Essentially, three issues are raised on appeal: (1) Should the district court have abstained from hearing this case? (2) If not, did the district court err in refusing to grant Marriott's motions for a directed verdict? (3) And, if not, did the district court apply an incorrect measure of damages? For the reasons discussed herein, we believe that the district court should not have abstained from hearing this case, that the defendants were not entitled to a directed verdict, and that the measure of damages applied in this case was correct. Accordingly, the decision of the court below is affirmed.
 
 I.
 
 2
 AMC is a building contractor which is based in Atlanta, Georgia, and which specializes in the design and installation of heating, ventilating and air conditioning ("HVAC") and plumbing systems. Marriott is based in Bethesda, Maryland, and is in the business of constructing and operating hotels and other related businesses. Marriott is one of two general partners of Project One, the owner of the Richmond Marriott Hotel (the "Hotel"). This suit stems from the events and problems surrounding the construction of the Hotel.
 
 
 3
 In early 1982, Marriott announced plans for the construction of the Hotel (the "Project"). AMC submitted the lowest bid to design and install the plumbing and HVAC systems for the Hotel, and eventually entered into a fixed-cost building contract with Marriott, dated December 1, 1982 (the "Contract"), to install the plumbing, HVAC, fire protection and thermal insulation systems for the Hotel. Instead of hiring a general building contractor to supervise and coordinate the Project, Marriott retained complete responsibility for and authority over the individual contractors who were working on the Hotel. A construction consultant hired by Marriott prepared a critical path method ("CPM") schedule, effectively a master construction timetable, to be followed by the various contractors. Although a "final" CPM schedule was issued in April 1983, it was modified frequently by Marriott as construction of the Hotel progressed. AMC began work on the Project in January of 1983, and continued its work through September of 1984. AMC was able to proceed largely as planned until October of 1983, at which time AMC claims it experienced several disruptions to its work schedule.
 
 
 4
 First, Marriott instructed AMC to activate and operate the building's permanent heating system ahead of schedule to provide heat during the 1983-1984 winter season. Second, AMC claims that its work schedule was disrupted by the delay of other contractors in completing the installation of the exterior walls and the windows on the building. In particular, AMC maintains that the incompleted exterior coupled with extremely cold weather conditions forced AMC to take steps to protect against the freezing of the fan coil units which it had installed in each of the Hotel's rooms, and in some cases to unfreeze already frozen fan coils. Finally, AMC claims that its installation schedule was disrupted by Marriott's inability to coordinate and direct the other building contractors working on the Hotel during the last six months of the Project, especially the drywall contractor. Specifically, AMC states that its plumbing rough-in work was hindered by the lack of progress of these other contractors.
 
 
 5
 As a consequence of these disruptions, AMC alleges that it incurred additional costs as a result of the "extra work" requested by Marriott during the course of the Project, and that it incurred considerable labor overruns, which were a direct "impact" of the modifications which Marriott made in its construction schedule and the other problems described above.
 
 II.
 
 6
 In April of 1985, AMC filed a Bill of Complaint to Enforce Mechanics' Lien in the Circuit Court of the City of Richmond, Virginia where this case is still pending. On August 1, 1988, after more than three years of proceedings in state court and a change in its lead counsel, AMC brought this diversity action in the court below. Marriott responded with an answer, a counterclaim, and a motion to dismiss based on the pending state litigation. Marriott's motion to dismiss was denied by an order of the district court entered October 4, 1988. On November 21, 1988, Marriott filed a motion for partial summary judgment with respect to delay damages, on the grounds that the Contract barred any recovery by AMC for damages resulting from delays caused by Marriott or other contractors in the course of the Project. By order entered December 8, 1988, the lower court granted the defendant's motion for partial summary judgment, ruling that claims for delay damages were barred, unless AMC could prove at trial that a modification of the Contract had occurred. Such proof was not offered at trial. Moreover, the order granting partial summary judgment has not been appealed by AMC, and is not at issue before this court. The remaining case was then submitted to a trial by jury. The defendants moved for a directed verdict at the conclusion of AMC's case-in-chief and after both parties had rested. These motions were denied by the trial court. Thereafter, the jury returned a verdict in favor of the plaintiff in the amount of $55,356.08 for "extra work" damages, and $402,042.30 for "impact" damages, together with interest. This appeal followed.
 
 III.
 
 7
 Of all the permutations of abstention that exist in the federal case law, the one most applicable to the present case is found in two older, but still applicable, Supreme Court cases, Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959), and County of Allegheny v. Frank Mashuda Co., 360 U.S. 185 (1959). In these two cases, the Court refused to extend the doctrine of abstention to diversity actions, holding that the federal courts should not relinquish jurisdiction over such suits to the state courts.[1] In our view, therefore, the district court did not err in refusing to abstain from hearing this suit.
 
 IV.
 
 8
 An appeal from a denial of a motion for a directed verdict is reviewed de novo. In other words, "in determining whether the verdict in this case should have been directed, we must apply the same standard [that was or should have been] employed by the district court in passing on the original motion." Tights, Inc. v. ACME-McCrary Corp., 541 F.2d 1047, 1055 (4th Cir.), cert. denied, Kayser-Roth Corp. v. Tights, Inc., 429 U.S. 980 (1976). The test for a directed verdict, at either the trial or the appellate level, is "whether there was sufficient evidence to support a verdict for the party opposing the motion." Id.; see also Lust v. Clark Equipment Co., Inc., 792 F.2d 436, 437-38 (4th Cir.1986). Based on our review of the record in the present case, we conclude that there was sufficient evidence to support a jury verdict in AMC's favor. Marriott's frequent modifications to its CPM schedule, its apparent inability to coordinate the activities of the individual contractors in accordance with its changing schedule, its failure to enclose the building in a timely fashion, and its request for AMC to activate the Hotel's heating system substantially ahead of schedule are all factors which readily sustain the verdict in AMC's favor. Accordingly, the district court did not err in denying Marriott's motions for a directed verdict.
 
 V.
 
 9
 With respect to the determination of damages, "[t]he trial court, as a fact-finder, possesses considerable discretion in fixing damages, and its decision will be upheld absent clear error." Little Beaver Enterprises v. Humphreys Railways, Inc., 719 F.2d 75, 79 (4th Cir.1983); see also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir.1987) (also applying the clearly erroneous standard); Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous....").
 
 
 10
 In this case, the measure of damages applied by the trial court does not reflect clear error. The district court permitted AMC to calculate its damages based on the "total cost recovery" method. Pursuant to this method, AMC determined its total cost incurred in fulfilling its obligations under the Contract. AMC then subtracted all payments made by Marriott pursuant to the Contract, all costs and labor overruns not attributable to Marriott, and certain other payments from Marriott to AMC under a series of supplemental agreements between them. The resulting amount was claimed as damages at trial.
 
 
 11
 Marriott provides no authority, and we find none, in support of its contention that the "total cost recovery" method which AMC used at trial to calculate the amount of its damages is objectionable per se. While the accuracy of such a measure of damages was disputed at trial, and could be questioned by reasonable minds, it does not appear to be clearly erroneous within the meaning of Fed.R.Civ.P. 52(a). Consequently, the district court did not err in allowing this measure of damages to be used by AMC.
 
 VI.
 
 12
 Based on our examination of the record in this case and our consideration of Marriott's contentions on appeal, we find that the district court committed no reversible errors. All things considered, the judgment below must be
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Rather, federal courts, if the need arises, may choose to certify complicated questions of state law to a state court for determination, if such a mechanism is available in the state court system. In the present case, no complicated issue of state law is implicated because the parties' mutual obligations are governed by the unambiguous and plainly applicable terms of the Contract. Even if there was a referable question of state law in this case, the district court would still be required to take jurisdiction of the case under the strictures of Louisiana Power and County of Allegheny