**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JO ANN B., INCORPORATED,
Plaintiff-Appellant,

v.

CARTER MACHINERY COMPANY,
INCORPORATED,
Defendant-Appellee.

No. 97-2133

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-96-1159-2)

Submitted: May 29, 1998

Decided: September 22, 1998

Before MURNAGHAN, HAMILTON, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael J. Gardner, CLARK & STANT, P.C., Virginia Beach, Virginia, for Appellant. Neil S. Lowenstein, VANDEVENTER BLACK, L.L.P., Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This admiralty case involves a dispute over engine repairs performed by Carter Machinery Company, Inc. (Carter) to a commercial fishing vessel, the Jo Ann B. (the Vessel), brought by Jo Ann B., Inc. (the Vessel Owner). The action alleged liability of Carter based on breach of Carter's contractually implied warranty of workmanlike performance in the repair of the Vessel's engine. In addition to other damages, the Vessel Owner sought recovery of lost lay shares on behalf of its crew. Carter filed a counterclaim for the unpaid balance of its initial repairs, and for its costs in completing additional repairs requested by the Vessel.

The district court granted Carter's pre-trial partial summary judgment motion denying the recovery of lay shares as a matter of law. The remaining issues of liability were also determined adversely to the Vessel Owner by the district court, sitting in admiralty, without a jury, and following a three-day trial. The district judge determined that Carter was not liable to the Vessel Owner, and that Carter was entitled to recover $4,000 from the Vessel Owner as the outstanding value of its initial repairs.

The Vessel Owner filed a post-trial motion to alter the judgment, which, after consideration of the parties' briefs and reconsideration of the evidence, the district court denied. This timely appeal from the district court's bench ruling and denial of the Vessel Owner's motion to alter judgment followed. For the reasons set forth below, we affirm the district court's judgments.

The trial evidence was as follows. The Vessel was purchased by the Vessel Owner in 1988 from an insurance company after it had been damaged in a casualty. It was refurbished and used by the Vessel Owner as a commercial fishing vessel. The engine was over thirty

2

years old and had been rebuilt on multiple occasions prior to it being presented to Carter for replacement of piston and cylinder liners. The engine had experienced increased use of oil and high base pressure, requiring maintenance, prior to the events which gave rise to this suit. In July 1996 Joe Williams, part owner of the Vessel, contacted Carter about doing the repairs he specified. Williams directed Carter to use owner-furnished parts to complete some of the work. When the Vessel was delivered to Carter, the engine did not have all its component parts, including parts related to the oil and exhaust systems which later became the focus of the Vessel Owner's complaints. The engine room was unusually dirty, having oil on the deck and bulkheads. During the repair process, Carter found evidence of poor engine maintenance, and determined that the engine was in overall bad shape. Prior to its delivery to Carter, the Vessel Owner had experienced a base compression problem with the engine; the Vessel Owner failed to advise Carter of this problem during the initial repair efforts.

Carter disassembled the engine, which took two to three days. The engine and its parts were cleaned, inspected, and reassembled with the owner-furnished parts, a process that took ten days. When Carter tested the engine, it found that the owner-furnished turbocharger had failed and needed to be replaced. Carter replaced the part with a remanufactured part, after receiving authorization from Williams. On August 23, 1996, the Vessel Owner accepted the Vessel from Carter, and made a partial payment of $5,000 for the repairs before departing Carter's facility. A $4,000 balance was acknowledged by the Vessel Owner, but never paid.

Shortly after it departed Carter's facility, the Vessel engine began experiencing fluctuating oil pressure. The Vessel was returned to Carter's facility for further work. Carter's technicians worked daily on the Vessel, with the exception of Sundays and holidays, to solve the fluctuating oil pressure problem. On September 7, 1996, the Vessel Owner directed Carter to stop work, took the Vessel from Carter's facility, and had at least two third parties inspect and test the engine, including Alyn Fife, a local marine surveyor. The Vessel was returned to Carter, and troubleshooting efforts continued between September 19 and 26, 1996. During the troubleshooting, Williams was on the Vessel daily, was continually apprised of the status of the repairs, and provided repair directions to Carter. Plus, after the Vessel was

3

returned to Carter, Williams required Carter to allow Fife to have access to the facility, and he was on the Vessel almost daily for the purpose of overseeing and directing Carter's work on behalf of the Vessel Owner. Among the efforts Carter made to resolve the oil problem, it removed the pistons it had installed, and replaced them with a second set. As a result of Carter's many efforts at troubleshooting the fluctuating oil pressure problem, the problem resolved.

At this point, however, Carter discovered that the engine had a problem with excessive base pressure. Carter systematically began to troubleshoot the base compression problem through the second week of October 1996. Carter discovered that the base compression problem was being caused by an oil carryover related to the engine's breathing mechanism, not because of excess air as Williams and Fife believed, a possibility that Carter previously had ruled out. Upon making its discovery, Carter made certain modifications to the breather which improved the Engine's operation and increased its operational range, advised the Vessel Owner that it had determined that the base pressure problem was an air outflow and oil misting problem, and informed the Vessel Owner that it felt that it could solve the problem. Despite its partial solution of the problem, Williams and Fife ordered Carter to redirect its repair efforts to the possibility of air volume infiltration as the cause of the base compression problem. Carter continued to comply with that directive until the second week of October 1996 when Vessel Owner again directed Carter to cease work on the Vessel, removed the Vessel from Carter, and failed to return it. Carter had expended an additional $30,092.61, over the cost of its initial repairs, in its unsuccessful attempt to repair the engine problems.

The Vessel Owner failed to seek to have the engine repaired by another company despite the fact that at least one repairman, Sherman Garrish, whom the Vessel Owner contacted, opined that the engine was repairable, and offered to do the repairs. Instead, Williams took the Vessel to Garrish and instructed him to replace the entire engine with a spare engine he already owned. The replacement engine was an inoperable, non-marine engine which had to be rebuilt and modified prior to installing it into the Vessel. The engine replacement cost $55,000 and took twenty-four days to accomplish.

4

A district court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Civ. P. 52(a). See Yarmouth Sea Products Ltd. v. Scully, 131 F.3d 389, 392-93 (4th Cir. 1997) (citing Watson v. Lowcountry Red Cross, 974 F.2d 482, 485 (4th Cir. 1992); United Food & Commercial Workers v. Marval Poultry Co., 876 F.2d 346, 351 (4th Cir. 1989)); see also Norfolk Shipbuilding & Drydock Corp. v. M/Y Le Belle Simone, 537 F.2d 1201, 1203 (4th Cir. 1976). A finding is clearly erroneous when despite evidence to support it, the reviewing court on the entire evidence "'is left with the definite and firm conviction that a mistake has been committed.'" Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Questions of law, even in admiralty cases, are reviewed de novo. See Scully, 131 F.3d at 393; see also Neathery v. M/V Overseas Marilyn, 700 F.2d 140, 143 n.2 (4th Cir. 1983).

It is undisputed that Carter's contract for the repair of the Vessel was a maritime contract, and that Carter had a duty to perform the overhaul of the Vessel's engine in a workmanlike manner. See Little Beaver Enters. v. Humphreys Rys., Inc., 719 F.2d 75, 77-78 (4th Cir. 1983). The implied warranty in admiralty of ship repairers does not make the repairer a guarantor of the results of its work, and there is no liability on the part of the ship repairer if it has performed its work as a skillful workman should, or if the repairer's efforts at repair have been hindered by the actions of the other contracting party. Id. at 78. It is also undisputed that the Vessel Owner had a duty to mitigate its damages. See Agra, Gill & Deffus, Inc. v. Benson , 920 F.2d 1173, 1177 (4th Cir. 1990).

After a three-day bench trial, the district court found, as matters of fact, that both the Vessel and the engine were quite old, that the engine had been rebuilt on multiple occasions, and had had previous other difficulties. It further found that the Vessel Owner specifically ordered Carter at each stage what was to be and not to be done to the Vessel, and that Carter was required to follow the orders of the Vessel Owner. The court noted that Carter had the Vessel in its possession for a total of about five weeks, and that Carter acted timely and diligently in performing the work ordered by Williams at each stage of the repair. In connection with the oil fluctuation problem, the district court judge determined that the fluctuation was found as promptly as

5

could reasonably be expected, and that Carter acted reasonably and promptly in curing the oil fluctuation problem. The judge also determined, as matters of fact, that Carter also acted properly and in a timely manner in attempting to solve the blow-by problem; and that before Carter had a reasonable opportunity to investigate the cause of the oil mist, which Carter had isolated as the cause of the problem of the clogging of the breather, which in turn caused the base pressure problem, Williams removed the Vessel for the second and final time. Finally, the district court held, as a matter of fact, that had Williams not taken the Vessel from Carter for the first ten-day period, and Carter had had those additional ten days to work on the Vessel's problems, that Carter very well could have solved both problems much more quickly.

The district judge further found that the Vessel Owner failed to mitigate its damages. Specifically, the judge cited the following facts in support of his determination that the Vessel Owner failed to mitigate: (1) Williams took the Vessel from Carter for that first ten-day period; (2) Williams again took the Vessel away from Carter after it had solved half the problem of the blow-by by determining that the problem was getting the gases out of the crankcase; (3) Williams turned down Garrish's offer to look into the engine, which had just been rebuilt by Carter, before anything else was done, instructing Garrish instead to rebuild the spare engine and adapt it for use in the Vessel; and (4) the Vessel Owner was extravagant in its decision to abandon Carter's original $9,000 cost to rebuild the engine in favor of spending $55,000 to rebuild and replace the engine with the spare. Finally, the district court noted that both Williams and Fife, on behalf of the Vessel Owner, were at all times involved in the troubleshooting process, so they could not claim that Carter's actions were unauthorized.

On appeal, the Vessel Owner maintains that the district court should have found Carter liable because during the initial repairs it alleges that Carter improperly installed pistons and cylinder liners in a manner which induced the fluctuating oil pressure and excessive base pressure problem the engine later experienced. However, the evidence at trial reveals, at best, ambiguity as to a cause and effect relationship between Carter's installation of the pistons and cylinder liners and the fluctuating oil and excessive base pressure problem.

6

Specifically, Fife, the Vessel Owner's expert, testified that he did not know the cause of the oil fluctuation problem, and could only assume that the pistons installed by Carter were the problem because during the troubleshooting process, and in conjunction with one of the several piston changes by Carter, the fluctuation subsided. Moreover, there was no evidence of defect with any of the pistons installed by Carter, or with the manner in which the pistons were installed. There was additional dispute on this issue between the parties' experts, as to whether the pistons could even have caused the fluctuation problem. As to the Vessel Owner's claim that the cylinder liner projection caused the base compression problem with the engine, there was evidence from the Vessel Owner's own experts that the base compression problem could have been caused by any number of things other than Carter's actions with the cylinder liner. We find that the factual determinations upon which the district court relied in concluding that Carter was not liable were not clearly erroneous. Nor do we find error with the district court's conclusion that there was insufficient evidence in this case to establish that Carter breached its duty of workmanlike performance.

In addition, the Vessel Owner claims that the district judge improperly concluded that the Vessel Owner failed to mitigate its damages. It maintains that it was perfectly reasonable to take the Vessel from Carter after Carter had possession of the Vessel for fifty-four days, and after having expended $10,265 for the initial work and another $30,092.61 for the troubleshooting work, in order to give it to Garrish for what turned out to be twenty-four days and an expense of $59,000 to get an operable fishing Vessel. One problem with the Vessel Owner's logic is that it ignores record evidence that Carter was hampered in its attempts to solve the Vessel's problems because: (1) some of the Vessel's problems were due to malfunctioning owner-supplied parts; (2) Carter was being directed in its repair efforts by Williams and, later, by Fife; (3) the Vessel was taken from Carter in mid-work for other opinions; and (4) the Vessel was taken from Carter the final time after Carter had already identified the problem and partially solved it. Moreover, the record reveals that even Garrish thought the engine could be repaired, rather than going through the time and expense of putting an entirely new engine into it. Finally, the replacement engine Williams used was inoperable and non-marine, thus requiring extensive modifications, work, and expense to make it

7

usable on the Vessel. Given these facts, as found by the district judge, we agree with the district judge that the Vessel Owner's actions were undertaken out of impatience, were unreasonable, and constituted a failure to mitigate.

From our review of the evidence before the district judge throughout this three-day bench trial, we cannot say that the district court's judgment is clearly erroneous. See McAllister v. United States, 348 U.S. 19, 20 (1954); M/Y Le Belle Simone, 537 F.2d at 1203. The findings of the district judge, in applying the facts to the law, that Carter did not breach its warranty of workmanlike performance and that the Vessel Owner failed to mitigate its damages are amply supported in the record. The Vessel Owner's contention on appeal that the district court should have construed the facts differently, in essence arguing that there are two permissible views of the evidence in this case, is without merit, given the applicable standard of review. See id.

The Vessel Owner also claims on appeal that the district court erred pre-trial in its determination that the Vessel Owner was not entitled to recover from Carter the lay shares of its crew. Given the disposition of this appeal on the issue of liability, we decline to address this issue as moot.

For the reasons set forth above, we affirm the district court's judgment. We further find that the district court did not abuse its discretion in denying the Vessel Owner's motion to alter judgment. See Temkin v. Frederick County Comm'r, 945 F.2d 716, 723 (4th Cir. 1991). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

8