## Richmond

MARYMOUNT COLLEGE OF VIRGINIA v. H. H. HARRIS, STATE HIGH-
WAY COMMISSIONER.

November 30, 1964.

Record No. 5800.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Cornelius H. Doherty* (*Cornelius H. Doherty, Jr.,* on brief), for the appellant.

*Paul D. Stotts, Assistant Attorney General* (*Robert Y. Button, Attorney General; M. Ray Johnston, Assistant Attorney General; Jesse, Phillips, Kendrick & Gearheart,* on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

Marymount College of Virginia, the complainant, appeals from a final decree sustaining a demurrer to its bill of complaint, dismissing

its bill and denying it an injunction restraining H. H. Harris, State Highway Commissioner, the defendant, "from proceeding in the taking and condemning of the plaintiff's property."

In its bill, the complainant alleged that it was the owner of property located at 2807 North Glebe Road, Arlington, and, "that this property is operated as a Junior College for Girls"; that the defendant had evidenced an intention to condemn a portion of the complainant's property for the improvement of Route 120 (North Glebe Road) by filing a certificate of deposit in the Circuit Court of Arlington County; that the land which the defendant was seeking to condemn was within five hundred feet of the buildings erected and used for school purposes prior to the time the condemnation proceedings were instituted, and that such condemnation was prohibited by Code, § 25-46.6.

The defendant's demurrer asserted that his powers with respect to the condemnation of the complainant's property were unaffected by the limitation contained in Code, § 25-46.6 and that the bill was, therefore, "insufficient in law and in equity."

The sole reason assigned by the chancellor for his action was that, "the said demurrer is well taken and should be sustained."

Code, § 25-46.6, upon which the complainant relies, is a part of Title 25, entitled "Eminent Domain" and is contained in Chapter 1.1, styled "Condemnation Generally." Its pertinent provisions read as follows:

"(b) The lands of any university, incorporated college, or other seminary of learning, not owned and controlled by the Commonwealth, shall be subject to condemnation for the purposes of public highways, except that no part of such lands shall be condemned which are within five hundred feet of any building erected and used for school purposes at the time the proceedings are instituted, nor through the land which surrounds the school buildings and is used at such time as a campus, park, or athletic ground or field in connection therewith."

The sole question to be decided is whether the limitation set forth in Code, § 25-46.6 is applicable to the defendant in the exercise of the powers of eminent domain delegated to him by the legislature.

The defendant contends that the limitation of Code, § 25-46.6 is not applicable to the eminent domain proceedings instituted against the complainant because the powers and procedures relative to such proceedings instituted by him are exclusively fixed by Code, §§ 33-57 and 33-59.

Code, §§ 33-57 and 33-59 are a part of Title 33, entitled, "Highways, Bridges and Ferries" and are contained in Chapter 1, styled, "State Highway Commission and Highways Generally," under Article 5, "Eminent Domain and Damages."

Code, § 33-57 vests the defendant with the power to acquire by purchase, gift, or power of eminent domain such lands and interest therein deemed to be necessary for the public highway purposes of the state.

Code, § 33-59, prior to an amendment in 1964 which is not applicable here but which will be noted later, was in the following language:

*"Procedure in General.*—Proceedings for condemnation under this article shall be instituted and conducted in the name of the State Highway Commissioner and the procedure shall be in accordance with the provisions of this article."

In determining this controversy, we are not unmindful of the rule, cited by the defendant, that one of the inherent and inalienable attributes of a sovereign state is the right of eminent domain. We recognize that the defendant has been vested, by the legislature, with the power to exercise such right with regard to public highways. We pay heed to his argument that a limitation on such power must be found in an expression of the legislature before it can be given effect. The crucial question, then, is whether the limitation involved in this case has, by legislative intendment, been made applicable to the powers vested in the defendant.

In answering this question, an examination of the history of the statutes involved will be helpful.

The present day statutes relating to eminent domain all find their beginnings in an act approved January 18, 1904 (Acts of Assembly, Ex. Sess. 1904, ch. 608, p. 957), the first general law on the subject enacted after the adoption of the Constitution of 1902.

The act set forth the manner and the extent of exercise of the power of eminent domain by railroad and other companies possessing such power. In addition, § 25 of the act vested the courts and boards of supervisors of counties, the councils of cities and towns, the trustees of school districts and educational and state institutions with the power to condemn land for public purposes. This section became § 4385 of the Code of 1919 and § 25-232 of the Code of 1950.

Section 24 of the act set forth the limitation pertaining to the condemnation of land, for public highways, owned by colleges and lo-

cated within five hundred feet of their buildings. This section became § 4384 of the Code of 1919 and, through subsequent revisions of the Code, has remained virtually unchanged until the present time, finding its place today as Code, § 25-46.6.

An act approved March 6, 1906 (Acts of Assembly, 1906, ch. 73, p. 71), first established the State Highway Commission and the office of the State Highway Commissioner. The act did not confer upon either the Commission or the Commissioner the power of eminent domain. It was not until 1916 that such power was conferred. In that year, a statute (Acts of Assembly, 1916, ch. 483, p. 811) amended § 25 of the act of 1904 so as to include the State Highway Commission among those entities entitled to exercise the power of eminent domain under the act. Section 4385 of the Code of 1919 reflected the change brought about by the 1916 amendment.

This situation, with the powers of the State Highway Commission relating to eminent domain being delineated in the general condemnation statutes, continued until 1940. In that year, an act was approved (Acts of Assembly, 1940, ch. 380, p. 666) separately specifying, in § 1, the powers of the State Highway Commissioner relative to eminent domain and providing, in § 2, that procedure for the exercise of such powers should, "be mutatis mutandis the same as is prescribed by law for railroad corporations." Section 1 of the 1940 act became § 1969 j (1) of the Code of 1942 and § 33-57 of the Code of 1950. Section 2 became § 1969 j (2) of the Code of 1942 and § 33-59 of the Code of 1950.

The specification of the powers of the State Highway Commissioner in § 1 of the 1940 act, although expressed in language somewhat different from that of § 25 of the 1904 act, did not, in fact, enlarge upon or create different powers from those originally vested in the State Highway Commission. And the legislature did not remove the name of the State Highway Commission from those entitled to condemn land under the provisions of Section 25 of the 1904 act, now § 25-232 of the Code of 1950, nor has it done so since.

It is clear that when the forerunner of Code, § 25-46.6 was first adopted in 1904, it was effective to bar the condemnation of land, for public highway purposes, owned by a college and within five hundred feet of its buildings. This limitation was applicable to any entity possessing the power of eminent domain, which sought to condemn land for such purposes. This was so because the sole and exclusive authority for condemnation was found in the same statutory

source which imposed the limitation and the authority was, therefore, *ex proprio vigore*, subject to the limitation.

The same situation continued after the State Highway Commission was added to the statute as a condemning authority because its powers immediately became subject to the same limitation.

Nor did the situation change after the enactment, in 1940, of present Code, § 33-57, which separately defined the powers of eminent domain of the State Highway Commissioner. This was so because Code, § 33-59 provided that the exercise of such powers should be controlled by the provisions of Title 25, when the procedures therefor were not in conflict with Title 33. And so, when the State Highway Commissioner instituted such proceedings under Title 25, the limitation with respect to the land of colleges was immediately brought into play.

The defendant tacitly concedes in his brief that such was the effect of Title 25 until 1960. He argues, however, that all of this was changed by the amendment, in 1960, of Code, § 33-59, which provided that in eminent domain proceedings instituted by him, "the procedure shall be in accordance with the provisions of this article."

The defendant says that the effect of that change is that, "all provisions of Title 25 which might have been applicable to highway condemnation before 1960 have been inapplicable to any proceedings brought by the State Highway Commissioner since the effective date of the 1960 legislation." The limitation in Code, § 25-46.6 is applicable, the defendant asserts, only to those proceedings instituted by, "corporate bodies and political subdivisions."

We cannot agree with the position of the defendant. In the first place, the phrase, "for the purposes of public highways," found in the limitation in Code, § 25-46.6, is all-inclusive. By its very language, it relates to all public highways, whether those sought to be established or improved by the State Highway Commissioner, or by a county or a municipality. Had the legislature, when it amended Code, § 33-59 in 1960, intended the change to have the effect the defendant insists upon, it would have been a simple matter for it to add language either to that Code section or to Title 25 to accomplish that result.

Morever, Code, § 33-59 merely provides that the *procedure* in eminent domain proceedings instituted by the defendant shall be in accordance with the provisions of Title 33. In considering Code, § 25-46.6, we are not dealing with a matter of procedure but, instead, with a matter of *substance*. It cannot be presumed that the legislature,

by the language used in Code, § 33-59, intended to remove the statutory protection afforded to colleges in their ownership of land devoted to educational uses.

To give Code, § 33-59 the effect sought by the defendant would be to say that, by its enactment, the legislature had repealed what is now Code, § 25-46.6 insofar as it once related to eminent domain proceedings instituted by the defendant. We cannot find such intent expressed in Code, § 33-59. As we said in *City Richmond* v. *Drewry-Hughes Co.*, 122 Va. 178, 194, 90 S. E. 635, 94 S. E. 989, 993:

". . . [T]here is always a presumption more or less strong, according to circumstances, that a statute is not intended to repeal a prior statute on the same subject, unless it does so in express terms."

Furthermore, the legislative history since 1960 of the statutes here involved displays no intent that the effect of the limitation in question has been, to any degree, abated. At its 1962 session, the legislature repealed and reenacted Chapter 1 of Title 25, retaining, in Code, § 25-46.6 of new Chapter 1.1, the same limitation as had existed since 1904.

At its 1964 session, after the appeal had been granted in this case, the legislature amended Code, § 33-59. The change merely provided that all suits should be instituted and conducted in the name of the State Highway Commissioner without naming the individual who may be such Commissioner and that in event of the death, removal, retirement, or resignation of the Commissioner, such suits should automatically survive in the name of his successor.

Here again, if it were intended that the disputed limitation was to have the restricted effect which the defendant asserts and that Code, § 25-46.6 should stand repealed as it affected the defendant, the legislature surely, on one or the other of these two occasions, would have said so in plain terms.

Another rule is applicable here, as set forth in *Shepherd* v. *Box Company*, 154 Va. 421, 425, 426, 153 S. E. 649:

"In the construction of its provisions, it is to be remembered that the Code itself is a single act of the legislature. 'The different sections should be regarded, not as prior and subsequent acts, but as simultaneous expressions of the legislative will' . . . All provisions there appearing which deal with the same subject should be construed together and reconciled whenever possible."

Bearing in mind the principles of law which have been stated, considering the history of the legislation here involved and viewing

the plain language of Code, § 25-46.6, we are of opinion that the limitation there imposed has, by an expression of legislative intent, been made applicable to eminent domain proceedings instituted by the State Highway Commissioner against land owned by, "any university, incorporated college, or other seminary of learning, not owned and controlled by the Commonwealth."

Accordingly, it was error for the chancellor to sustain the defendant's demurrer and dismiss the complainant's bill. For this error, the decree appealed from will be reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*