# CIRCUIT COURT OF THE CITY OF NORFOLK

AMEC Civil, L.L.C.

v.

Commonwealth of Virginia

February 12, 2008

Case No. 06-0340-00

BY JUDGE CHARLES E. POSTON

On July 10, 2007, the Court heard oral argument on several motions in this action. Having considered all of the pleadings filed to date, the several written submissions of the parties, and oral argument of counsel, the Court denies the Defendant's Pleas in Bar asserting that AMEC's claims are barred for failure to provide written notice.

*Factual and Procedural History*

For familiar reasons, the Court views the facts in the light most favorable to the Plaintiff. In the spring of 2000, the Virginia Department of Transportation ("VDOT") awarded AMEC Civil, L.L.C. ("AMEC") the

contract for construction of the Route 58 Clarksville Bypass in Mecklenburg County (State Project Nos. 6058-058-E26, C501, B610, B640, B641, B642, B643, B644, B645, B646, B647, B648) at a contract price of $72,479,999.49. The project consisted of 11 bridges and approximately four miles of roadway. The largest of the bridges, B616, spanned the Kerr Reservoir, an Army Corps of Engineers controlled reservoir with hydroelectric spillway. Bridge B616 consisted of 81 drilled shafts, 28 bents, and 18,950 cubic meters of concrete and was the centerpiece of the project.

On November 22, 2006, AMEC filed an Amended Complaint against VDOT alleging breach of contract, encompassing approximately thirteen specific claims. *See* Amended Complaint. In response, VDOT filed various Pleas in Bar asserting that AMEC's claims are barred due to AMEC's failure to provide VDOT with written notice as required under Contract Specification § 105.16. Specifically, VDOT claims that the contract and the applicable statutes require written notice from the Plaintiff as an absolute prerequisite for filing. The Plaintiff asserts, *inter alia*, that actual notice complies with the contract and statutes.

## Discussion

### II. *Contractual Notice Requirements*

VDOT correctly asserts that § 105.16 of the contract required AMEC to give VDOT timely written notice of any potential claim it had against the Commonwealth at the time the occurrence causing the claim arose. However, VDOT incorrectly concludes that failure to give written notice is fatal to the claim. Contract Specification Section 105.16, entitled "Submission and Disposition of Claims" states:

> *Early or prior knowledge by the Department of an existing or impending claim for damages could alter the plans, scheduling, or other action of the Department or result in mitigation or elimination of the effect of the act objected to by the Contractor.* Therefore, a written statement describing the act of omission or commission by the Department or its agents that allegedly caused damage to the Contractor and the nature of the claimed damages shall be submitted to the Engineer at the time of occurrence [or] beginning of the work upon which the claim and subsequent action are based.

Contract Specification § 105.16 (emphasis added). The rationale behind requiring a written notice is to put VDOT on notice of any potential claims for damages and to give it an opportunity to investigate the situation and take action to mitigate or eliminate the effects of the problems. In the case *sub judice*, VDOT insists that AMEC's failure to provide "a written statement" of alleged damages to the Engineer pursuant to the contract is tantamount to negating any potential claims it may seek against the Commonwealth.

AMEC responds that, even if it failed to comply with the contractual written notice provision, VDOT at all times had *actual notice* of its claims. In particular, AMEC notes that VDOT actively investigated the contractor's alleged claims and took actions to defend itself in adversarial proceedings despite the imperfect format in which those claims were brought. Furthermore, AMEC asserts that VDOT has suffered no prejudice by not receiving AMEC's claims in writing. Therefore, AMEC contends that actual notice substantially satisfied the purpose behind the contractual written notice provision. For these reasons, *inter alia*, AMEC claims that the actual notice it provided VDOT was a valid substitute for written notice. Alternatively, AMEC asserts that § 104.03, not § 105.16, provides the proper notice requirement for differing site conditions and that VDOT is applying the wrong section of the contract in defending its position on this issue. Regardless of which provision applies to the present case, AMEC argues that VDOT implicitly waived AMEC's contractual duty to provide written notice.

a. *Interpreting the Contractual Written Notice Provision in § 105.16: Submission and Disposition of Claims*

Regarding the construction of a contract, courts across the United States consistently hold that the parties' intentions and the contract's underlying purpose remain the paramount considerations:

> [I]t is well settled that the whole instrument is to be considered, and not one provision only, in determining the meaning of any and all its parts; not the words merely in which the provisions are expressed but their *object and purpose*, as disclosed by the language, by the subject matter, the condition and situation of the parties. Consideration must be given to the general circumstances surrounding or attending its execution, and effect given to each provision, if possible.

*Carpenter v. Gate City*, 185 Va. 734, 740-41, 40 S.E.2d 268, 271 (1946) (emphasis added). Significantly, the Supreme Court of Virginia has held that, although "the academic definition of words is often important, [] more important still is the *purpose* of the covenant." *Id.* (emphasis added) (citing *Krikorian v. Dailey*, 171 Va. 16, 24, 197 S.E. 442, 446 (1938) (Holt, J.)); *see also Rice v. United States*, 428 F.2d 1311, 1314 (Ct. Cl. 1970) (When a court interprets contractual terms, "the context and intention[s] [of the parties] are more meaningful than the [terms'] dictionary definition[s]."). In other words, when interpreting a contract, the ends of justice require that the court look to the underlying *purpose* the contractual terms are designed to achieve. *See Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 64, 547 S.E.2d 216, 226 (2001) (When interpreting a contract provision, a court must take into consideration "[t]he facts and circumstances surrounding the parties when they made the contract, and the *purposes* for which it was made . . . .") (emphasis added); *see also Hunt Constr. Group v. United States*, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("The contract must be considered as a whole and interpreted to effectuate its *spirit and purpose*, giving reasonable meaning to all parts.") (emphasis added); *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965) ("The language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances."); 5 Arthur L. Corbin, *Corbin on Contracts* § 24.20 (Rev. ed. 2002) ("When the *principal purpose of the parties* becomes clear, further interpretation should be guided thereby.") (emphasis added).

Accordingly, in the case *sub judice*, the Court looks to the underlying *purpose* of the contract's written notice requirement. Section 105.16 of the contract clearly outlines the rationale requiring AMEC to provide VDOT with written notice of any claim it might have against the Commonwealth. The principal purpose of written notice provision is to put VDOT on notice of any "existing or impending claim for damages" that might "alter the plans, scheduling, or other action of the Department" or that could result in VDOT taking action to mitigate or eliminate "the effect of the act objected to by the [AMEC]." Contract Specification § 105.16.

Importantly, the purpose of the notice requirement can effectively be realized even if the notice is not in writing. In fact, mere *verbal notice* may satisfy the writing requirement if it is later reduced to writing. *See Welding, Inc. v. County Serv. Auth.*, 261 Va. 218, 227, 541 S.E.2d 909, 914 (2001). This is true even if the government itself reduces the verbal notice to writing. *Id.* (Government's assertion that the contractor's verbal notice of claim during progress meeting did not satisfy statute was not a valid argument; meeting

minutes may provide sufficient notice, even if recorded by the government). It follows that *any writing* that memorializes the fact the VDOT had *actual notice* of a claim could be sufficient. Accordingly, evidence of actual knowledge, constructive notice, and verbal notice must be taken into account in conjunction with any available writings (including meeting minutes and all written correspondence between the parties) to demonstrate whether adequate notice was provided.

 b. *Interpreting the Contractual Written Notice Provision in § 104.03: Differing Site Conditions*

 Alternatively, AMEC contends that the Differing Site Conditions clause of § 104.03 is the controlling section of the Standard Specifications, rather than § 105.16 as VDOT claims. Particularly, AMEC notes that, while § 105.16 deals with "claims" in general, § 104.03 specifically addresses the contractual remedy for differing site conditions, which is a major issue in this case. AMEC says that, although both sections address notice, § 104.03 is controlling because it is more specific. *See SDG Dev. Co. v. Watkins Land, L.L.C.*, 60 Va. Cir. 124 (2002) ("When there are seemingly conflicting provisions in a contract, any apparent inconsistency between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter.").

 The relevant portion of § 104.03 provides:

> During the progress of the work, if subsurface or latent physical conditions are encountered at the site differing materially from those indicated in the contract or if unknown physical conditions of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in the work provided for in the contract, are encountered at the site, *the party discovering such conditions shall promptly notify the other party* in writing of the specific differing conditions before they are disturbed and before the affected work is performed.

Contract Specification § 104.03 (emphasis added). AMEC notes that, rather than imposing a unilateral duty to provide notice upon the contractor, this language provides for a *bilateral* duty on each party to inform the other party when differing site conditions are encountered. This duty applies where "latent" and "unknown" differing site conditions exist through no act or omission by either party and charges both parties with a duty to inform the

party lacking notice. Conversely, § 105.16 only applies if the impact was caused by some "act of omission or commission by the Department" and requires AMEC *unilaterally* to notify VDOT of any potential claims in writing.

In the present case, AMEC claims that VDOT had a "superior knowledge" of the differing site conditions present on the Project and, since VDOT was the "party discovering such conditions," it had a duty to notify AMEC in writing of said differing site conditions pursuant to § 104.03. At a minimum, AMEC contends that the parties jointly discovered the differing site conditions. Regardless, the bilateral notice requirement in § 104.03 compels an examination into the parties' actual knowledge and constructive notice concerning differing site conditions. Indeed, whether VDOT had actual knowledge of differing site conditions related to the problems with the drilled shafts, *inter alia*, is directly relevant to whether it was required to provide notice under § 104.03. Therefore, determining whether adequate notice was provided pursuant to § 104.03 requires an examination of actual knowledge, constructive notice, and verbal notice from each party. In other words, lack of written notice, standing alone, does not contractually preclude AMEC from properly bringing claims against VDOT.

### c. *VDOT Waived AMEC's Duty to Provide Written Notice*

AMEC also urges that, in addition to having actual notice substitute for written notice pursuant either to § 105.16 or § 104.03, VDOT implicitly waived AMEC's duty to comply strictly with the contract's written notice requirement by affirmatively acting upon AMEC's actual notice.

In 1983, the Fourth Circuit addressed a contract case involving the installation of a hydraulic steering system onto the plaintiff's shipping vessel. Plaintiff's vessel experienced persistent steering difficulties, and defendant arranged to send a welder to repair the steering system. The repair was not effective, and plaintiff sued defendant for defective workmanship and breach of warranty. The defendant asserted that the plaintiff was barred "from recovering because of its failure to comply with the contract's thirty-day written notice requirement."[1] *Little Beaver Enters. v. The Humphreys Rys.,*

---

[1] The relevant contract language provided: "In case of defective workmanship or material, [Humphreys Railways'] liability is limited strictly to the cost of repair, correction, or replacement thereof, and *only where such defects are reported to [Humphreys Railways] in writing within thirty days after completion of the work*." (Emphasis added).

*Inc.,* 719 F.2d 75, 79 (4th Cir. 1983). Although the defendant admitted receiving actual notice orally, it contended that actual notice "was inadequate to supplant the contract's written notice provision." *Id.* The court disagreed, holding, "Like other contract provisions, the *requirement of written notice may be waived.* The waiver need not be expressed to be effective; it is sufficient if the *acts or conduct of one party* evidences an intention to relieve the other party of his duty to strictly comply with the contract terms." *Id.* (emphasis added). That court concluded, "Humphreys not only acted on Little Beaver's oral notice, but the [*actual*] *notice gave Humphreys every substantive protection strict compliance with the contract would have provided." Id.* (emphasis added).

Similarly, AMEC provided VDOT with actual notice and VDOT acted on that notice. It is clear that the parties communicated with each other about AMEC's claims while the work was in progress, and, obviously, the parties have been preparing for litigation for quite some time now. Moreover, VDOT did not suffer any prejudice from receiving actual notice as opposed to written notice; it benefited from every protective function that the contractual written notice requirement was designed to provide. Therefore, by acting upon AMEC's actual notice, VDOT effectively waived strict compliance with the contract's written notice requirement.

### d. *Contractual Notice Requirements: Summary*

When evaluating the disputed contractual terms of the written notice provision in either § 105.16 or § 104.03, the Court must consider each section's underlying purpose. Looking at the intentions of the parties together with the language of both sections, it is clear that the written notice requirements were designed to put VDOT on notice of any claims for damages and provide it the opportunity to investigate such claims. Since the purpose of these notice provisions can be achieved through actual notice, the Court may examine evidence of actual knowledge, constructive notice, and verbal notice in conjunction with any available writings to demonstrate whether adequate notice was provided. In so doing, the Court finds that the actual notice AMEC provided VDOT adequately achieved the inherent purpose of the notice provisions in both § 105.16 and § 104.03. Moreover, it appears from the submissions to date that VDOT effectively waived AMEC's duty to strictly comply with the actual notice provisions since VDOT relied and acted upon the actual notice that AMEC provided. In short, assuming that AMEC has substantially complied with the contractual written notice provisions, VDOT's claim for lack of valid notice pursuant to the contract would be invalid.

## II. *Statutory Notice Requirements*

### a. *Legal Function Trumps Legal Form*

According to Va. Code Ann. § 33.1-386, AMEC must provide *written notice* of its intention to bring claims against VDOT when such claims first arise. Indeed, the defendant correctly states that AMEC's submission of notice to VDOT "as set out in § 33.1-386 [is] a condition precedent to bring a[] [civil] action." Va. Code Ann. § 33.1-387. These statutes, taken together, suggest that to bring a claim against VDOT, AMEC must first file a written notice of its intent to bring such a claim with the Department.

Addressing statutory notice requirements in general, the Supreme Court of Virginia recognizes that, "giving [] notice is a condition precedent to the right to bring the suit." *Bowles v. City of Richmond*, 147 Va. 720, 727, 129 S.E. 489, 490 (1926). However, "still recognizing that the reason of the law is the life of the law," Virginia courts unanimously hold that such statutes "should have a liberal construction, and a *substantial compliance* with [them] *is sufficient*." *Id.* (emphasis added). In other words, strict compliance with legal form must yield to achievement of the law's primary purpose.

Contrary to VDOT's position, when interpreting Va. Code Ann. § 33.1-386, form does not trump function. In fact, the Supreme Court of Virginia has long held:

> Those [statutory] direction which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory, and if the act is performed but not in the time nor in the precise mode indicated, *it will be sufficient if that which is done accomplishes the substantial purpose of the statute*.

*Id.* at 728, 129 S.E. at 490-91 (citing *Jackson v. Dotson*, 110 Va. 46, 51, 65 S.E. 484, 486 (1909)) (emphasis added). Moreover, on the issue of statutory notice provisions, the Supreme Court of Virginia has held, "There is nothing sacrosanct about [them];" rather good "faith and fair intent must prevail." *Bowles*, 147 Va. at 733, 129 S.E. at 491.

In the case at bar, VDOT had actual notice that AMEC intended to bring a claim against it pursuant to Va. Code Ann. § 33.1-386. They discussed the claim and followed the contractual procedures for resolving claims while work was in progress. After the action was filed, the parties attempted settlement negotiations and engaged in extensive preparation for trial. Obviously, VDOT was not prejudiced by AMEC's failure to file a written claim telling VDOT exactly what it already knew. "It would violate every principle of fair dealing" for VDOT to receive actual notice of AMEC's intent to file a claim against it, commence an adversarial course of dealing with AMEC anticipating litigation, and then turn around and say that AMEC's claim fails due to "a fatal technical omission in [its] notice." *Id.* Indeed, "[i]t would seem to be a mere quibble to say that" AMEC's claims against VDOT "should be ignored or rejected because [they were] not, *ipsissimis verbis*, in the very form and language used in the statute." *Dotson*, 110 Va. at 50, 65 S.E. at 486. To hold otherwise would permit VDOT to engage in discussion for resolving a problem during construction, refuse to resolve the matter, and then escape any potential liability because the contractor failed to present in writing claims about which VDOT had intimate knowledge. Such a result would be inequitable in the extreme.

Much like Va. Code Ann. § 33.1-386, the Virginia Public Procurement Act requires contractors working on projects where the bid was solicited by a public body, e.g. VDOT, to provide written notice of intent to file a claim at the time of the occurrence of the work on which the claim is based. *See* Va. Code Ann. § 2.2-4363. However, in evaluating this notice requirement, the Supreme Court of Virginia has held that the "timing and form of an alleged notice of intent . . . requires an examination of the circumstances of each case." *Dr. William E. S. Flory Small Bus. Dev. Ctr., Inc. v. Commonwealth*, 261 Va. 230, 238, 541 S.E.2d 915, 919 (2001). The *Flory* Court noted that the underlying public policy purpose of this notice requirement is to serve as an official indication of opposing contract interpretations, *see Modern Cont'l S. v. Fairfax County Water Auth.*, 70 Va. Cir. 172 (2006), and to alert public bodies to possible claims so they can budget for the completion of the project, *see MCI Constructors v. Spotsylvania County*, 62 Va. Cir. 375 (2003). The *Flory* Court concluded that, although the form of the plaintiff's notice was improper, the function of the notice provision had been achieved. Accordingly, the Court held that the plaintiff's claim could not be dismissed for failing to comply with the written statutory notice requirement.

Analogously, AMEC did not provide VDOT with written notice of its claims as required by Va. Code Ann. § 33.1-386. However, AMEC's actual notice served as an official indication to VDOT of the contractor's "opposing

contract interpretations" and alerted VDOT of AMEC's claims, thus giving the Department the opportunity to take appropriate remedial measures. Therefore, adhering to the logic underpinning *Flory*, AMEC's claim should not be dismissed since the public policy function of the written notice provision was achieved through actual notice. Again, form fails to trump function.

Because form does not prevail over substance, AMEC's actual notice was a valid substitute for written notice since it effectively accomplished the purpose of the written notice requirement. There is no doubt that AMEC's actual notice put VDOT on notice of its claims against the Department, that it allowed VDOT to investigate the alleged claims, and that it enabled VDOT to reach an initial determination on the merits of said claims. In other words, to deny AMEC's claim against VDOT simply because it failed to comply with a procedural formality would contradict public policy and circumvent the spirit of the statute.

b. *The Code of Virginia is One Act and Must be Construed as a Whole*

The Code of Virginia of 1887 was held to be one act, which was to be construed as a whole. *See Betram v. Commonwealth*, 108 Va. 902, 62 S.E. 969 (1908); *S. & N.W. Ry. v. Commonwealth*, 104 Va. 314, 51 S.E. 824 (1905); *First Nat'l Bank of Richmond v. Holland*, 99 Va. 495, 505, 39 S.E. 126, 129 (1901); *Gaines' Adm'r v. Marye*, 94 Va. 225, 26 S.E. 511 (1897). Similarly, the Code of Virginia of 1919 was held to be a single act. *Shepherd v. F. J. Kress Box Co.*, 154 Va. 421, 153 S.E. 649 (1930). This ancient rule of statutory construction continues to apply to the current Code of Virginia, as amended in 1950. *Marymount Coll. of Va. v. Harris*, 205 Va. 712, 717, 139 S.E.2d 43, 47 (1964) ("In the construction of its provisions, it is to be remembered that the Code itself is a single act of the legislature.") (*quoting Shepherd*, 154 Va. at 425, 153 S.E. at 650); *see also* Va. Code Ann. § 1-1 (1950) ("The laws embraced in this and the following titles, chapters, articles, and sections of this act shall constitute . . . the 'Code of Virginia' "). As such, the Code's "different sections should be regarded, not as prior and subsequent acts, but as simultaneous expressions of the legislative will." *Shepherd*, 154 Va. at 425, 153 S.E. at 650 (*citing Dillard v. Thornton*, 70 Va. (29 Gratt.) 392, 396 (1877)). Thus, when a Virginia court interprets a statute enacted by the legislature, it is "not called upon to construe an independent act of the General Assembly, but a section of the Code." *Ritholz v. Commonwealth*, 184 Va. 339, 367, 35 S.E.2d 210, 223 (1945) (*quoting Good v. Commonwealth*, 155 Va. 996, 1000, 154 S.E. 477, 478 (1930) (Campbell, J.)).

Accordingly, when construing a section of the Code, courts should not be "concerned with the heading of the section, as it is purely a matter of informative convenience and in no sense as part of the provisions of the section." *Ritholz*, 184 Va. at 367, 35 S.E.2d at 223. Moreover, since "the Code is one act and is to be construed as a whole," *id.*, when construing a given statute, the Court is "not confined to the language of that section, but can look to other sections of the Code" where similar language is employed for guidance. *Id.*

In the case *sub judice*, VDOT asserts that AMEC is precluded from bringing suit against it since AMEC failed to comply with the statutory written notice provision contained within Va. Code Ann. § 33.1-386. The statute's written notice provision requires the plaintiff to present the defendant with a "written notice of the contractor's intention to file" a claim against VDOT "at the time of the occurrence or beginning of the work upon which the claim and subsequent action is based." *Id.* The written claim must state the "amount to which [the contractor] deems himself, his subcontractors, or his material persons entitled under the contract." *Id.*

Importantly, the statute requires the plaintiff to provide this information to VDOT so that, "[w]ithin ninety days from receipt of such claim, the Department [can] *make an investigation* and notify the claimant in writing by certified mail of its decision" regarding the alleged claim. *Id.* (emphasis added). According to this plain language, the underlying purpose of the written notice provision is to put VDOT on notice that a contractor is alleging a claim against it and to give the Department time to investigate the merits of the claim and render an initial decision on the matter.

Other sections of the Code also require a plaintiff to submit a written notice of its intent to file a claim against the defendant. The purposes underlying the written notice provisions in these statutes are remarkably similar to the purpose of the notice requirement in Va. Code Ann. § 33.1-386, namely to put the defendant on notice of any alleged claims for damages, give it an opportunity to investigate those claims, and to take actions to mitigate or eliminate the effects of the suspected problems. The Court finds it significant that the purpose underlying various statutory written notice provisions is like a common thread woven throughout the fabric of the Code.

When considering contract claims against the Commonwealth, "courts should strictly construe statutes waiving sovereign immunity" so that only those types of cases that are specifically permitted by statute are allowed to proceed. *Treece v. Commonwealth*, 21 Va. Cir. 148, 151 (1990); *see also* Va. Code Ann. § 2.1-223.1 (1987). However, "the rule of strict construction does

not exten[d] to a *hypertechnical interpretation of statutory language regarding procedure for filing claims.*" *Id.* (emphasis added). The *Treece* Court noted that the intent behind the statute's notice provision was that "[d]irect communication of the claim [be made] to the appropriate official." *Id.* Indeed, the court noted that "only substantial compliance is required" to satisfy the statute's notice requirement. *Id.*

In the present case, AMEC has substantially complied with the written notice requirement of Va. Code Ann. § 33.1-386. AMEC provided VDOT with actual notice of its claim by directly communicating with the appropriate officials from VDOT regarding its allegations against the Department. Accordingly, the Court declines to embrace VDOT's "hypertechnical interpretation" of the statute's written notice requirement since doing so would negate the very purpose of the provision.

The Virginia Tort Claims Act states that a plaintiff's tort claim is "forever barred unless the claimant . . . has filed a *written statement* of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable." Va. Code Ann. § 8.01-195.6 (emphasis added). The functions of this written notice provision are "to enable the Commonwealth to *make a prompt investigation,* correct dangerous or defective conditions, and to avoid the expense and delay of litigation by settling claims where appropriate." *Treece,* 21 Va. Cir. at 152-53 (emphasis added) (citing *Town of Crewe v. Marler,* 228 Va. 109, 112, 319 S.E.2d 748, 749 (1984)). Similarly, the purpose behind the written notice requirement in Va. Code Ann. § 33.1-386 is to put the Department on notice of the plaintiff's alleged claims (albeit contractual claims) and enable the Commonwealth to make a prompt investigation into the matter. Importantly, the objectives underlying the notice requirements in both the Virginia Tort Claims Act and Va. Code Ann. § 33.1-386 can be achieved through *substantial compliance* with the written notice provisions, i.e. actual notice.

Outside of the Tort Claims Act, a plaintiff must satisfy certain notice requirements before bringing suit in tort against a municipality. According to the City Charter of Richmond, no action in tort could be maintained against the city "unless a *written statement, verified by the oath of the claimant,* his agent, or attorney, of the nature of the claim . . . [was] filed with the city attorney of said city within six months after such cause shall have accrued." City Charter of Richmond, section 19-g, Acts 1918, p. 182 (emphasis added).

In a tort suit against the City of Richmond, Louise Bowles alleged that she was injured by reason of the negligent failure of the City to safeguard properly the approach to an old bridge. She provided the City with written

notice of the nature of her claim and stated her intention to file a lawsuit in tort against the City. However, the plaintiff neglected to verify her written notice under oath, pursuant to the City Charter of Richmond. The Supreme Court of Virginia found that, although the plaintiff's written notice to the city failed to comport with the written notice provision in the city's charter because the notice was not verified, "the city attorney had *complete and actual notice* of the accident; [] he *thoroughly investigated* its causes and the city's liability, and in writing denied all responsibility for her injuries." *Bowles*, 147 Va. at 727, 129 S.E. at 490 (emphasis added). Therefore, the Court concluded that even though Bowles did not fully satisfy the statute's written notice requirement, "*every purpose of the requirement of the notice [in] the charter was met*, and the city's law office put in possession of every fact and circumstances essential to a just determination of the plaintiff's claim." *Id.* (emphasis added).

Similarly, although AMEC did not fully comply with the written notice requirement of Va. Code Ann. § 33.1-386, every purpose of the notice provision has been achieved and VDOT has not suffered any prejudice since it is aware of every fact and circumstance "essential to a just determination of the plaintiff's claim." By contending that AMEC's claims are barred because it failed to comply with the statute's written notice requirement, VDOT "is assuming a very technical position" which thwarts the intrinsic rationale behind the statute. *Mills v. Pennsylvania Mut. Live Stock Ins. Co.*, 57 Pa. Super. 483, 490 (1914).

In the medical malpractice arena, "At any time within thirty days from the filing of the responsive pleading in any action brought for malpractice against a health care provider, the plaintiff or defendant may request a review by a medical malpractice review panel" in writing. *See* Va. Code Ann. § 8.01-581.2:1 (1950) (the request for a panel shall be deemed to be filed when it is delivered or mailed by registered or certified mail). The written notice provision is designed to call the defendant's attention to the general time, place, and character of the events complained of in the malpractice suit. *See Grubbs v. Rawls*, 235 Va. 607, 369 S.E.2d 683 (1988). However, the function of the written notice provision "is not only to place the health care provider on notice that a specific claim is being made, but also to allow the health care provider the *opportunity to investigate the basis of the claim* and to preserve evidence." *Francis v. McEntee*, 13 Va. Cir. 357, 359 (1988) (emphasis added). Importantly, when faced with an allegedly defective notice of claim, *reasonable compliance with the notice requirement* is all that is mandated. *See Dolwick v. Leech*, 800 F. Supp. 321 (E.D. Va. 1992).

The Virginia Workers' Compensation Act (originally enacted in 1950) requires an employee to give written notice of an accident to the employer within thirty days of the occurrence of the accident. Va. Code Ann. § 65.2-600(D). The written notice "shall state the name and address of the employee, the time and place of the accident, and the nature and cause of the accident and the injury." Va. Code Ann. § 65.2-600(B). However, *"written notice is unnecessary if the employer has actual notice* through a foreman or other superior officer." *Goodyear Tire & Rubber Co. v. Harris*, 35 Va. App. 162, 171, 543 S.E.2d 619, 623 (2001) (emphasis added); *see also Newport News Shipbuilding & Dry Dock Co. v. Barnes*, 32 Va. App. 66, 70, 526 S.E.2d 298, 300 (2000); *Kane Plumbing v. Small*, 7 Va. App. 132, 138, 371 S.E.2d 828, 832 (1988).

Interestingly, in adjudicating claims arising under the Workers' Compensation Act, "the commission and judiciary have accorded *equal dignity to written and actual notice* to employers." *Uninsured Employer's Fund v. Edwards*, 32 Va. App. 814, 818, 531 S.E.2d 35, 36-37 (2000) (emphasis added). In other words, actual notice is an effective substitute for written notice when the purpose behind the Act's notice provision is achieved. The Act's notice provision was designed to apprise the Workers' Compensation Commission that a claim is being made, *Cheski v. Arlington County Pub. Schs.*, 16 Va. App. 936, 434 S.E.2d 353 (1993), enable the employer to *adequately investigate the accident and injuries*, and permit the employer to provide appropriate medical care. *Saul v. Total Action Against Poverty*, VWC File No. 196-47-46 (Sept. 27, 2002).

Additionally, compensation for injuries "will not be barred for failure to give timely [written] notice unless the employer can prove it was prejudiced by such lack of notice." *Harris*, 35 Va. App. at 171, 543 S.E.2d at 623 (citing Va. Code Ann. § 65.2-600(E)). In other words, "Lack of written notice . . . does not bar recovery if the employer has *actual notice of the injury and is not prejudiced." Barnes*, 32 Va. App. at 70, 526 S.E.2d at 300 (emphasis added); *see also Department of Game & Inland Fisheries v. Joyce*, 147 Va. 89, 136 S.E. 651 (1927).

In sum, several sections of the Code contain similar written notice requirements. The common purpose behind these statutory requirements is to put the defendant on notice of the plaintiff's claim, provide the defendant an opportunity adequately to investigate the claim, and allow the defendant to make an initial determination as to how to address the alleged issues at hand. Substantial compliance with statutory written notice provisions is deemed sufficient when these objectives are achieved. In other words, when these common goals are accomplished without causing the defendant to suffer any prejudice, actual notice may supplant written notice.

c. *Statutory Notice Requirements: Summary*

The Court is keenly aware that the Code of Virginia is a single act of the General Assembly and is to be interpreted as a whole. *Ritholz*, 184 Va. at 367, 35 S.E.2d at 223. Since the Court is not confined to the language of Va. Code Ann. § 33.1-386, but can look to other sections of the Code for guidance where similar language is employed, *id.*, the Court will adhere to the sound logic Virginia courts have adopted when interpreting the notice requirements in statutes concerning contract and tort suits against governmental entities, the Medical Malpractice Act, the Workers' Compensation Act, and the zoning statute. In so doing, the Court defers to the broad, deep-seated principle underpinning those statutes that legal form must yield to the interests of legal function.

Accordingly, the Court finds that, since the fundamental purpose of the written notice requirement in Va. Code Ann. § 33.1-386 was achieved through actual notice and since VDOT suffered no prejudice from AMEC's failure to abide by the statute's written notice provision, VDOT's assertion that AMEC's claim fails for want of proper notice is invalid.

## Conclusion

The primary motives underlying both the contractual and statutory written notice provisions at issue in this case were to put VDOT on notice of AMEC's claims, provide VDOT an opportunity to investigate the alleged claims, and to determine how to address them. The parties' filings and arguments, both oral and written to date, supports the Court's conclusion that these objectives were achieved through AMEC's actual notice. In other words, AMEC substantially complied with both the contractual and statutory notice provisions at issue. Moreover, VDOT did not suffer any prejudice from AMEC's failure to strictly comply with the written notice provisions.

Importantly, VDOT has affirmatively acted on AMEC's actual notice. Specifically, it has communicated with AMEC extensively regarding the disputed issues before litigation arose, actively engaged in settlement negotiations and other preliminary proceedings, and has aggressively prepared for trial. VDOT's assertion that AMEC's claim fails for want of proper notice is a highly technical argument that undermines the clear and unambiguous purpose of the written notice requirements.

Accordingly, the Court finds that AMEC's actual notice was sufficient enough to satisfy the statutory and written notice provisions as issue. Any other conclusion would frustrate the fundamental purpose of the statute's notice provision, offend the very notions of good faith and fair dealing, and be inimical to the interests of justice.

This case comes before the Court on the Defendant's Motion for Partial Summary Judgment on AMEC's Claims for Additional Compensation on Work Order No. 12. The Defendant also sought Partial Summary Judgment with respect to Work Order Nos. 4, 6, 7, and 16. The Court's ruling announced at oral argument remains unchanged as to those work orders. Having considered the parties' submissions and argument of counsel, the Court will grant the motion.

### Factual and Procedural History

In the Amended Complaint, AMEC seeks to recover from VDOT for breach of contract arising out of an agreement between the parties for the construction of eleven bridges and related roadwork in Clarksville, Virginia. VDOT also issued Work Orders requesting AMEC to perform additional work beyond what was requested in the Contract. VDOT issued Work Order No. 12, which extended project completion by a total of twenty days. AMEC alleges that VDOT has failed to compensate AMEC for the costs associated with the delays. Amended Complaint, ¶ 79. Specifically, AMEC claims that it is entitled to recover the additional days of "extended office overhead" and "other fixed costs." *Id.* at 80.

In the Motion for Partial Summary Judgment, VDOT claims that it is entitled to Partial Summary Judgment "based on the doctrines of Accord and Satisfaction, Release, Waiver, and/or Compromise." Motion for Partial Summary Judgment, ¶ 7.

### Discussion

In Virginia, a trial court may grant summary judgment when "no material facts are genuinely in dispute." *See Jackson v. Hartig*, 274 Va. 219, 231, 645 S.E.2d 303, 310 (2007). Under Rule 3:18 of the Rules of the Virginia Supreme Court, either party may make a Motion for Summary Judgment and the trial court may grant such motion if it appears that the moving party is entitled to judgment in his favor as a matter of law. Va. Sup. Ct. R. 3:18. In considering a Motion for Summary Judgment, the trial court

must adopt those inferences from the facts that are most favorable to the nonmoving party, unless those inferences are forced, strained, or contrary to reason. *Dickerson v. Fatehi*, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997) (citing *Carson v. LeBlanc*, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993)). Summary judgment is authorized only where the moving party is entitled to judgment as a matter of law and is appropriate only where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Id.* Summary judgment shall not be entered if any material fact is genuinely in dispute. Va. Sup. Ct. R. 3:18.

Work Order No. 12 was issued on April 9, 2002, "to address a plan error related to reinforcing steel work at B616, Pier Hammer Head pier cap." Amended Complaint, ¶ 76. The Work Order extended the Contract end date twenty days. AMEC claims that this Work Order did not resolve their claim for compensable time "because of other significant events, particularly the drilled shaft delays and high lake levels." *Id.* at 77.

VDOT claims that it is entitled to Partial Summary Judgment because Work Order No. 12 provides that it "will settle *any and all claims* associated with this matter." Motion for Partial Summary Judgment, ¶ 35. In other words, "by executing Work Order No. 12, AMEC agreed to accept the consideration as full and final settlement for 'any and all claims' associated with reinforcing steel they had assembled for B616, Pier 2 Hammer Head pier cap." *Id.* at ¶ 37.

According to the case law, "Where the language to be construed is unambiguous, it is elementary that its construction is a matter of law for the court." *Carpenter v. Gate City*, 185 Va. 734, 741, 40 S.E.2d 268, 271 (1946) (citing *Devany v. South Norfolk*, 143 Va. 768, 129 S.E. 672 (1925)). Furthermore, "where the agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Co. v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965).

Work Order No. 12 states "This work order will settle any and all claims associated with this matter." The Court finds that this language is clear and unambiguous, and by executing this Work Order, AMEC agreed that it would settle "any and all claims" associated with the reinforcing steel AMEC assembled for B616, Pier 2 Hammer Head pier cap. As there are no facts in dispute, the Court will grant the Defendant's Motion for Partial Summary Judgment on AMEC's claims for Additional Compensation on Work Order No. 12.